IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 27 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

EUGENE M. ROWAN,

        Plaintiff,

v.

HAYES CHRYSLER-DODGE-JEEP,

        Defendant.

CIVIL ACTION NO.

1:04-CV-1195--JEC

## O R D E R   &   O P I N I O N

This case is presently before the Court on defendant's Motion for Summary Judgment [45]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [45] should be **GRANTED**.

### BACKGROUND

This is an age discrimination and retaliation case. Plaintiff was born on June 30, 1951. (Def.'s Statement of Material Facts ("DSMF") [45] at ¶ 1.) He began working as a sales manager in defendant's Lawrenceville dealership in 1993. (*Id.* at ¶ 2.) In 1994, defendant promoted plaintiff to the position of finance

AO 72A
(Rev.8/82)

manager.    (*Id.* at ¶ 4.)[1]    Plaintiff was a finance manager in defendant's Lawrenceville dealership until he was terminated in January, 2003.  (Rowan Aff. [53] at ¶ 2.)

During most of plaintiff's tenure with defendant, he reported to Bill Griffith, the general sales manager at defendant's Lawrenceville location.  (Rowan Aff. [53] at ¶ 4.)  Griffith reported to Mike Hayes, partner and general manager of the dealership.  (Hayes Dep. at 7-8.)  Plaintiff had a good relationship with Griffith and Hayes, and was an effective finance manager.  (*Id.* at 48; Pl. Dep. at 62.)

Plaintiff began to experience problems when defendant transferred Griffith to its Gainesville location and promoted Stacey Kelly, who was much younger than Griffith, to general sales manager of the Lawrenceville dealership.  The parties agree that Kelly had a different leadership style than Griffith, and that plaintiff did not have as good a relationship with Kelly as he had with Griffith.  (Pl. Dep. at 48; DSMF at ¶ 13.)  Kelly was a less conservative manager than Griffith, and expected increased profits.  (Pl. Dep. at 48; DSMF at ¶ 13.)  Almost immediately after Kelly became the general sales manager, he and plaintiff had a disagreement about vacation time. (Pl. Dep. at 59.)  Plaintiff and Kelly subsequently had other

---

[1]    In 1994, plaintiff was one of two finance managers at the dealership.  (Rowan Aff. [53] at ¶ 2.)  After 1999, defendant hired a third finance manager.  (*Id.*)

AO 72A
(Rev.8/82)

disagreements concerning taking time off from work. (Pl. Dep. at 208.)  In addition, Kelly requested that plaintiff increase his production numbers, especially on the "back end"[2] of sales. (DSMF at ¶¶ 13-14; Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Br.") [53] at 2.)  Kelly also instituted various other business changes at the dealership. (DSMF at 13-14; Pl. Dep. at 48.)[3]

One of the changes Kelly proposed was a reorganization of the finance department and a corresponding new pay plan for the finance managers.  In 2002, there were three finance managers working at defendant's Lawrenceville dealership. (DSMF at ¶ 27; Rowan Aff. at ¶ 11.)  Prior to 2002, the used and new car divisions of the finance department were separate, with plaintiff primarily handling new cars and the other two finance managers, Shawn Bush and Sher Walker, handling used cars. (DSMF at ¶ 25; Rowan Aff. at ¶ 11.)  Under

---

[2]    The "back end" of a transaction includes optional items associated with the sale of a car, such as service contracts and insurance, which are sold in the finance office and are usually the most profitable sales for defendant. (Hayes Dep. at 32-34, 40.)

[3]    Defendant further contends that it expected plaintiff to average $1000 per vehicle of back end profits, which plaintiff consistently failed to do. (DSMF [45] at ¶¶ 16-18.)  Plaintiff denies and has presented some evidence to refute this allegation. (Rowan Aff. [53] at ¶¶ 5-6.)  In deciding defendant's motion for summary judgment, the Court construes the facts in the light most favorable to plaintiff.  *See Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).  Accordingly, for the purposes of this motion, the Court assumes that plaintiff was not expected to achieve the $1000 number, and did not, as defendant alleges, "consistently under perform" in his position. (Rowan Aff. at ¶ 6.)

Kelly's leadership, defendant decided to consolidate the new and used car departments, and to use a rotating schedule, with each finance manager working one day in new cars, one day in used cars, and then having one day off.   (DSMF at ¶ 26.)[4]   In conjunction with the consolidation and rotating schedule, defendant proposed to institute a new pay plan whereby all finance managers would be paid based on individual performance.   (*Id.* at ¶ 29.)   The new plan differed significantly from plaintiff's old pay plan, which was based primarily on store production.   (Rowan Aff. [53] at ¶ 3; DSMF at ¶ 29.)

According to plaintiff, defendant presented him with the new pay plan in late November or early December 2002.   (DSMF at ¶ 27; PSMF at ¶ 27; Pl. Dep. at 73-74.)[5]   Plaintiff opposed the new plan, which he

---

[4]   Plaintiff denies that defendant had a plan to consolidate the old and new car divisions, and to institute a new rotating schedule. (PSMF [53] at ¶¶ 26, 29.)   However, in support of his denial, plaintiff merely states that "[t]here is no evidence that any such plan . . . ever existed."   (*Id.*)   The Court does not agree.   Hayes testified that defendant proposed the new pay plan and rotating schedule as part of an overall consolidation.   (Hayes Dep. at 45.) As plaintiff has not cited any evidence in the record that refutes this fact, the Court accepts the fact as undisputed.   *See* Local Rule 56.1(B)(2).

[5]   Defendant contends that it presented plaintiff with the plan in the first quarter of 2002, but because of plaintiff's resistance to the plan, and in deference to his years of service with the company, defendant instituted the plan for the two other finance managers, but temporarily tabled the plan for plaintiff.   (DSMF at ¶¶ 27, 30.)   For purposes of this motion, the Court assumes, as plaintiff has asserted, that defendant first presented the new plan

AO 72A
(Rev.8/82)

claims would have reduced his pay by 40%.   (Rowan Aff. at ¶ 11.)
Although plaintiff acknowledges that the plan was the same for all
three finance managers, he argues that it was more favorable to Bush
and Walker,[6] because they worked primarily in used cars, an area that
provides more profit opportunities than new cars.   (Pl.'s Br. [53] at
3.)    Defendant contends, and plaintiff presents no evidence to
dispute, that with its planned consolidation of the new and used car
departments, and rotating schedule, the pay plan would have provided
the three finance managers similar pay opportunities.   (DSMF [45] at
¶ 31; Hayes Dep. at 45.)   Defendant also contends that the plan would
not have reduced plaintiff's pay if he had increased his numbers, as
he had been requested to do.    (DSMF at ¶ 33.)    Nevertheless,
plaintiff did not believe the new pay plan was fair.   (Rowan Aff. at
¶¶ 12-13; Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [53]
at Ex. 2.)

Plaintiff expressed his dissatisfaction with the plan to Kelly
and Hayes.   (Rowan Aff. at ¶¶ 12-13; Pl.'s Resp. to Def.'s Mot. for
Summ. J. ("Pl.'s Resp.") [53] at Ex. 2.)   In one conversation with
Kelly in late December 2002, which plaintiff tape-recorded and
transcribed, plaintiff threatened to leave his job as a result of the

---

to him in November or December of 2002.   (PSMF [53] at ¶27.)

[6]    Bush and Walker were both much younger than plaintiff.
(Pl.'s Resp. [53] at Ex. 7; Rowan Aff. at ¶ 10.)

AO 72A
(Rev.8/82)

new plan.   (Pl.'s Resp. at Ex. 2.)   After discussing the plan with
Kelly, plaintiff stated:

> Can I make this much working a lot less and not worrying
> about the people I work for elsewhere?  Sure.  No problem
> whatsoever.  Can I leave here and get another job?  No
> problem.  Not even blinking an eye.  Your competitors
> will love to have me, okay.

(*Id.*)   Plaintiff also made Hayes aware of his concerns about the
plan.  (Rowan Aff. at ¶ 12.)  Specifically, plaintiff told Hayes that
he did not think the plan would be successful, and that it was
"counter-productive."  (Pl. Dep. at 264; Hayes Dep. at 99.)

     Plaintiff admits that it was important to defendant that he
agree to the pay plan and rotation schedule because of "the
profitability tied into" the new program.  (PSMF at ¶ 32.)  To try to
obtain plaintiff's agreement, Hayes again discussed the plan with
plaintiff on January 3, 2003.   (DSMF [45] at ¶ 37.)   During this
discussion, Hayes insisted that plaintiff accept and "buy into" the
plan, while plaintiff continued to point out problems with the plan.
(*Id.*; Hayes Dep. at 54, 94-99.)[7]

---

[7]   Defendant contends that, during this meeting, plaintiff began
violently yelling that the program was "a rip-off" and would put
defendant out of business.   (DSMF at ¶ 38.)   Plaintiff denies
defendant's version of the events, and claims that he remained calm
during the meeting.  (Rowan Aff. at ¶ 18.)   For purposes of this
motion, the Court assumes that plaintiff's version of the meeting is
accurate.

AO 72A
(Rev.8/82)

The next morning, plaintiff and Hayes continued their discussion about the plan. (DSMF at ¶ 39; Pl. Dep. at 224-26.) During this discussion, plaintiff again informed Hayes that he thought the plan was unfair, and Hayes reiterated that defendant was instituting the plan in spite of plaintiff's objections. (Pl. Dep. at 225.) Hayes then told plaintiff that he "ha[d] to have [plaintiff] a hundred percent behind" the plan, to which plaintiff responded: "I can't look you in the eye and tell you I'm a hundred percent in favor of a 40 percent paycut." (Id.) When pressed on the issue, plaintiff repeated: "I can't be a hundred percent behind what looks like is going to be a 40 percent paycut, but I want to stay, so I will take this pay plan and see if I can make it work in my department." (Id. at 226.) After that statement, Hayes expressed again that he needed "a hundred percent" agreement to the plan, and asked for plaintiff's resignation. (Id. at 228.) When plaintiff refused to tender his resignation, Hayes told plaintiff that he was fired. (Id.) Plaintiff and Hayes parted amicably, with Hayes providing plaintiff a positive letter of recommendation. (Rowan Aff. at ¶ 22; Pl.'s Resp. at Ex. 2.)[8]

---

[8] Plaintiff tape-recorded his final conversation with Hayes the morning after his termination. (Pl.'s Resp. at Ex. 2.) It is apparent from the transcript of this conversation that the parties viewed the decision as "just business" and that plaintiff and Hayes parted amicably. (Id.)

Plaintiff subsequently filed a charge with the EEOC alleging age discrimination. (Compl. [1] at Ex. A.) While plaintiff's EEOC charge was pending, plaintiff applied for and received a position at Stone Mountain Chrysler. (Rowan Aff. at ¶ 23.) Plaintiff's manager at Stone Mountain Chrysler was Jim Jackson. (*Id.*) Plaintiff contends that defendant informed Jackson of plaintiff's EEOC charge, in retaliation against plaintiff for filing the charge. (*Id.*) Plaintiff alleges that Jackson terminated his employment after learning about the EEOC charge. (*Id.*)

Shortly thereafter, plaintiff applied and was hired for a finance manager position at Metro Dodge. (Rowan Aff. at ¶ 24.) According to plaintiff, after he was hired but before his first day of work, the general sales manager at Metro Dodge told him that he was aware of plaintiff's EEOC charge and that his services would not be needed. (*Id.*) As with Stone Mountain Chrysler, plaintiff alleges that defendant informed Metro Dodge of his EEOC charge in retaliation against plaintiff for filing the charge. (*Id.*) After his termination from Metro Dodge, plaintiff filed a second EEOC charge alleging retaliation. (Compl. [1] at Ex. B.)

Plaintiff subsequently filed this lawsuit, asserting claims for age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and retaliation, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-

3(a).   (Compl. [1] at 2.)   Defendant has filed a motion for summary judgment on plaintiff's age discrimination and retaliation claims, which is presently before the Court.   (Def.'s Mot. for Summ. J. [45].)

**DISCUSSION**

### I.   **Summary Judgment Standard**

Summary   judgment   is   appropriate   when   the   "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."'   FED. R. CIV. PLAINTIFF. 56(c).   A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.   *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.   Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In such a situation, there can be no genuine issue as to

9

any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. PLAINTIFF. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## II.   Plaintiff's Age Discrimination Claim

It is unlawful under the ADEA to discharge or otherwise discriminate against an employee because of his age. *Standard v.*

10

*A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1329 (11th Cir. 1998) (citing 29 U.S.C. § 623(a)(1)).  Plaintiff concedes that he has no direct evidence of age discrimination.  (Pl. Dep. at 138-144, 155-59, 207.) *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358-59 (11th Cir. 1999) (explaining that "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age' will constitute direct evidence") (quoting *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081-82 (11th Cir. 1990)).  As plaintiff relies on circumstantial evidence to support his ADEA claim, the Court applies the *McDonnell Douglas* burden shifting framework.  *Smith v. J. Smith Lanier & Co.,* 352 F.3d 1342, 1344 (11th Cir. 2003).  Under this framework, plaintiff initially must establish a *prima facie* case of age discrimination.  *Id.*  Once plaintiff makes out a *prima facie* case, the burden of production[9] shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Id. See also, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); and *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-253 (1981).  If defendant makes the necessary proffer, the burden

---

[9] "This is not a shift in the burden of persuasion but simply requires the employer to present evidence to explain its actions." *Thurman v. Robertshaw Control Co.,* 869 F. Supp. 934, 939 (N.D.Ga. 1994) (O'Kelley, J.).  "If successful, the employer defeats the presumption of intentional discrimination created by the *prima facie* case." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993)).

AO 72A
(Rev.8/82)

once again shifts to plaintiff to show that the stated grounds are merely a pretext for discrimination. *Smith,* 352 F.3d at 1344. *See also, Earley,* 907 F.2d at 1081 (citing *Burdine,* 450 U.S. 248). Summary judgment is appropriate if the plaintiff does not produce evidence to rebut defendant's legitimate, nondiscriminatory reasons. *Chapman v. AI Transport,* 229 F.3d 1012, 1037 (11th Cir. 2000).

A.    Plaintiff's *Prima Facie* Case

In order to establish a *prima facie* case of age discrimination, plaintiff must demonstrate that:  1) he is over 40 years old; 2) he was qualified for his job; 3) he was terminated from his job; and 4) he was replaced by a person substantially younger than himself. *Eskra v. Provident Life and Accident Ins. Co.,* 125 F.3d 1406, 1411 (11th Cir. 1997).  Defendant concedes that plaintiff has established the first three prongs:  he was 51 years old, and qualified for his position as finance manager, when defendant terminated his employment in January, 2003.  (Def.'s Br. in Supp. of its Mot. for Summ. J. ("Def.'s Br.") [45] at 14.)   Defendant contends, however, that plaintiff was not "replaced" by a substantially younger person. (*Id.*)  This argument is not persuasive.

There is evidence in the record that defendant initially replaced plaintiff with Sher Walker, age 39.  (*See* Jaramillo Aff. [53] and Daponte Aff. [53].)  Vladimir Jaramillo and Joseph Daponte, employees of defendant, both testified that Walker assumed

12

plaintiff's position after his termination. (Jaramillo Aff. [53] at ¶ 8; Daponte Aff. [53] at ¶ 8.) Other evidence in the record suggests that defendant subsequently replaced plaintiff with Mark Malone. (Daponte Aff. at ¶ 9; Hayes Dep. at 105.) Although defendant at one point stated that Malone was born in 1947, his driver's license and personnel records indicate that he was born in 1957, and is thus six years younger than plaintiff. (Pl.'s Resp. at Ex. 10.) *See Damon,* 196 F.3d at 1360 (concluding that five year age difference between plaintiff and his replacement was sufficient to support *prima facie* case of age discrimination). In addition, plaintiff has presented evidence that Malone was significantly less experienced than plaintiff. (*Id.*) *See Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1390 (11th Cir. 1983) (noting that plaintiff can establish a *prima facie* ADEA case with evidence that his replacement is only slightly younger, but much less qualified).

As noted, defendant does not dispute that plaintiff was over 40, was qualified, and was terminated from his position as finance manager in January, 2003. (Def.'s Br. [45] at 14.) Moreover, plaintiff has produced evidence that he was replaced by a significantly younger and less qualified employee. (Pl.'s Resp. [53] at Ex. 10; Jaramillo Aff. at ¶ 8; Daponte Aff. at ¶¶ 8-9.) Accordingly, there is sufficient evidence in the record to support plaintiff's *prima facie* case of age discrimination.

13

B.    Defendant's Legitimate, Nondiscriminatory Reasons

As plaintiff has established a *prima facie* case of age discrimination, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's termination. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253. Defendant asserts that it terminated plaintiff as a result of his refusal to accept, and negative attitude about, a new pay plan. (Def.'s Br. [45] at 19.)

There is ample evidence in the record that plaintiff opposed the new plan, and was vocal about his opposition. In one conversation with Kelly, which plaintiff tape-recorded and transcribed, he expressed his dissatisfaction with the plan, and threatened to leave his position with defendant as a result of the plan. (Pl.'s Resp. at Ex. 2.)

Plaintiff subsequently continued to express his displeasure about the plan to Hayes and Kelly. (Pl. Dep. at 217-227; Hayes Dep. at 55-56.) Plaintiff informed Hayes the night before his termination that he thought the plan was "counter-productive" and that it would not be successful. (Pl. Dep. at 264.) The next morning, after Hayes repeatedly told plaintiff that he needed him to be "a hundred percent" behind the plan, plaintiff continued to object to the plan, while stating that he could not be "a hundred percent" behind a plan that he believed would cut his pay by 40%. (Pl. Dep. at 225-226.)

14

During this conversation, Hayes asked for plaintiff's resignation, and then fired him. (*Id.* at 228; Hayes Dep. at 56.)

Further, plaintiff concedes that it was important to defendant that he accept the pay plan and rotation schedule because of the profitability tied into the new program. (DSMF [45] at ¶ 32; PSMF [45] at ¶ 32.) Hayes also testified, and plaintiff does not dispute, that he thought plaintiff's negative attitude towards the plan presented a problem for the company. (Hayes Dep. at 94-97, 100.) Plaintiff's concession, in conjunction with both plaintiff and Hayes' testimony concerning plaintiff's opposition to the plan, is more than sufficient to support defendant's asserted justification for terminating plaintiff. *See Chapman,* 229 F.3d at 1030 (explaining that employer's proffered reason must simply be "one that might motivate a reasonable employer"). The Court thus finds that defendant has met its "exceedingly light burden" of articulating a legitimate, non-discriminatory reason for plaintiff's termination. *See Perryman v. Johnson Prods. Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir. 1983).

C.    Pretext

At this stage, in order to survive summary judgment, plaintiff must present evidence sufficient to permit a reasonable factfinder to conclude that the reason given by defendant was not the real reason for his termination, but merely a pretext for discrimination. *See*

15

*Cooper   v.   Southern   Co.,*   390   F.3d   695,   725   (11th   Cir. 2004)(recognizing that, in addition to establishing a *prima facie* case, plaintiff must respond to defendants' asserted legitimate non-discriminatory reasons for taking an adverse employment action); *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988) (noting that plaintiff's ability to make out a *prima facie* case of discrimination "does not in and of itself foreclose the possibility of summary judgment being granted in favor of the employer"). Plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256.  Plaintiff has failed to do either.

As   evidence   of   pretext,   plaintiff   cites:    1)   alleged inconsistencies   in   defendant's   explanation   for   plaintiff's termination; and 2) circumstantial evidence of Kelly's discriminatory animus.  (Pl.'s Br. [53] at 12-17.)  As to plaintiff's first theory, after a thorough review of the record, the Court has found no inconsistencies in defendant's explanation for its decision to terminate plaintiff.  Indeed, defendant has consistently asserted that it terminated plaintiff as a result of his resistance to proposed business changes, including the new pay plan.  (*See* Answer [3] at ¶ 11; DSMF [45] at ¶ 40; Hayes Dep. at 56.)

16

As his primary example of the alleged inconsistencies in defendant's explanation, plaintiff cites defendant's statement to the Georgia Department of Labor and its Interrogatory Responses in this case. (Pl.'s Br. [53] at 13.) When plaintiff applied for unemployment benefits, defendant advised the Department of Labor that it terminated plaintiff "because he was not in favor of proposed changes in the business office." (*Id.*) In its Interrogatory Responses in this case, defendant phrased its explanation slightly differently, stating that it terminated plaintiff "after a conversation regarding a proposed pay plan change and rotating schedule, both of which plaintiff resisted." (*Id.*) Plaintiff argues that these statements are somehow inconsistent. (*Id.*) The Court does not agree.

Although defendant's Interrogatory Response is perhaps more detailed, it is in no way inconsistent with defendant's statement to the Department of Labor. *See Standard,* 161 F.3d at 1332 (stating that employer's "later elaboration . . . of a general reason is insufficient to show pretext"). That defendant's wording of its explanation is not precisely identical in every instance does not mean that it is "rife with inconsistencies," as plaintiff contends. (Pl.'s Br. [53] at 12.) *Id.* The minor variations that plaintiff highlights would not permit a rational jury to conclude that defendant's explanation is "unworthy of credence," particularly when

17

plaintiff's own deposition testimony supports defendant's asserted justification. (*See* Pl. Dep. at 217-227, 264.) *Id.*

As to Kelly's alleged discriminatory animus, the Court notes as an initial matter that plaintiff was terminated by Hayes, not Kelly. (Pl. Dep. at 228; Hayes Dep. at 56, 98-99.) Generally, only evidence of discriminatory animus on the part of the relevant decision-maker is pertinent to establish pretext. *See Standard,* 161 F.3d at 1330 (noting that only statements of the relevant decision-maker are "probative of discriminatory intent"). Plaintiff's argument that Kelly was the "true" decision-maker is without support in the record, and is not persuasive. (*See* Pl. Dep. at 228; Hayes Dep. at 56, 98-99.)

Even assuming Kelly was the decision-maker, plaintiff has not presented sufficient evidence of discriminatory animus to demonstrate pretext. As evidence of Kelly's discriminatory animus, plaintiff alleges: 1) that Kelly made discriminatory statements in a tape-recorded and transcribed conversation with plaintiff in late December, 2002; and 2) that Kelly replaced older employees with younger, less experienced employees. (Pl.'s Br. [53] at 15-17.) Both allegations are without support in the record.

Regarding the tape-recorded conversation, plaintiff claims that Kelly told plaintiff that he "did not fit in with the dealership because of his age." (Pl.'s Br. [53] at 16.) The transcript

18

reveals, however, that *plaintiff* made this statement, not Kelly. (*Id.* at Ex. 2.)  Specifically, plaintiff stated to Kelly:  "I'm beginning to feel like I'm the antic [sic] around here and I don't fit."  (*Id.* at lines 503-505)  Kelly responded with questions about how to make plaintiff fit, including getting plaintiff more involved in meetings, and discussing other ways to make plaintiff more "a part of it."  (*Id.* at lines 506-515.)  Later in the conversation, plaintiff stated to Kelly:  "And all of a sudden, it's like, you don't sit in the team anymore [Gene].  You don't have the young aggressive style that everybody else has."  (*Id.* at lines 549-50.) To this statement, Kelly responded:  "That's just what you think." (*Id.* at line 553.)  Plaintiff's subjective feelings of not fitting in because of his age cannot be imputed to Kelly.  Moreover, none of Kelly's statements suggest an age-based discriminatory animus, or an opinion, on the part of Kelly, that plaintiff "did not fit in with the dealership because of his age."  (*Id.*)  Thus, the transcript attached to plaintiff's response does not demonstrate pretext.

Plaintiff's allegation that Kelly replaced older employees with younger, less experienced employees similarly finds little support in the record and, in any case, does not provide a basis for inferring discriminatory animus.  In support of this allegation, plaintiff cites his own affidavit. (Pl.'s Br. [53] at 2.)  In his affidavit, plaintiff states that after Kelly was promoted, "older employees

19

under him began to be replaced with employees under the age of 40 with less experience." (Rowan Aff. at ¶ 10.)   In his deposition, however, plaintiff admitted that he is not aware of the circumstances surrounding any of the older employees leaving the dealership. (Pl. Dep. at 108-121.)   Plaintiff does not even know whether the employees were terminated or whether they resigned or retired. (*Id.*)   All he knows is that they are no longer working for defendant. (*Id.* at 119.)   *Compare Damon,* 196 F.3d at 1362 (finding decision-maker's admission that he terminated or demoted five older employees in a one-year time period, in conjunction with other circumstantial evidence of age-based discriminatory animus, was sufficient to establish pretext).   Plaintiff's "conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination." *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir. 1987) (affirming district court's order granting summary judgment on ADEA claim where plaintiff failed to rebut employer's legitimate, nondiscriminatory reasons for plaintiff's termination).

As plaintiff correctly notes, the Court must consider the "substance, timing, and context of [plaintiff's] proffered evidence to determine whether it is sufficient to submit the issue of pretext to a jury." (Pl.'s Br. [53] at 12) (citing *Damon,* 196 F.3d at 1354). Applying that principle to this case, all the evidence in the record,

20

including plaintiff's own testimony, supports defendant's assertion that its decision to terminate plaintiff had nothing to do with age, but was instead a direct result of plaintiff's refusal to accept, and negative attitude towards, a new pay plan. (*See* Pl. Dep. at 217-227, 264; Hayes Dep. at 56, 94-97, 100.) Plaintiff opposed the plan and was vocal about his opposition from the moment defendant introduced it. (*See* Pl.'s Br. at 3 and Pl.'s Resp. at Ex. 2.) Plaintiff expressed his dissatisfaction with the plan to Kelly and Hayes, telling Hayes that he thought the plan was "counter-productive" and that it would not be successful. (Pl.'s Br. [53] at 3-4; Pl. Dep. at 264.) Immediately before plaintiff's termination, Hayes told plaintiff that he needed plaintiff's "a hundred percent" agreement to the plan. (Pl. Dep. at 225-226.) Plaintiff responded that he could not be "a hundred percent" behind it, and continued to point out problems with the plan. (*Id.*) Hayes subsequently requested plaintiff's resignation. (*Id.*)

Hayes insisted that the plaintiff commit to enthusiastically support the company's new pay plan; he refused. Plaintiff contends that his nine years as a loyal and productive employee of defendant's was more important than his refusal to enthusiastically cooperate with implementation of the new plan. However, the Court is "not in the business of adjudging whether employment decisions are prudent or fair." *Damon,* 196 F.3d at 1361. An employer "may terminate an

21

employee for a good or bad reason without violating federal law," as long as the termination was not motivated by unlawful discriminatory animus. *Id.* (citing *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).

Under the *McDonnell-Douglas* burden shifting framework, once defendant proffers a sufficiently probative, credible, non-discriminatory reason for its actions, as it has in the instant case, plaintiff must come forward with specific evidence tending to show that defendant's asserted reason is a pretext for discrimination. *Grigsby,* 821 F.2d at 596; *Chapman,* 229 F.3d at 1033. Plaintiff has not met this burden. As a result, defendant is entitled to summary judgment on plaintiff's age discrimination claim.

## III. Plaintiff's Retaliation Claim

Plaintiff has also asserted a claim for retaliation under the anti-retaliation provision of the ADEA, 29 U.S.C. § 623(d).[10] To prevail on his retaliation claim, plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) a causal connection exists between

---

[10] Plaintiff initially asserted a retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3. (Compl. [1] at ¶ 4.) In response to defendant's motion for summary judgment, plaintiff cites the anti-retaliation provision of the ADEA. (Pl.'s Br. [53] at 17.) The Court presumes that plaintiff is asserting a retaliation claim under the ADEA, as its anti-retaliation provision more specifically addresses the facts of this case.

22

the protected activity and the adverse employment action. *Pipkins v. City of Temple Terrace*, 267 F.3d 1197,1201 (11th Cir. 2001); *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000).

Typically, a plaintiff asserting retaliation sues the employer who rendered the adverse action against him. Here, defendant was plaintiff's former employer at the time that plaintiff asserts defendant's retaliatory acts occurred. As a former employer, defendant necessarily lacked the power to actually effectuate any adverse action against the plaintiff. Nevertheless, the Supreme Court has held that the retaliatory acts of a former employer can be actionable. In *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997), that Court held that the anti-retaliation provisions of the ADEA apply to former, as well as current, employees in order to prevent post-employment retaliation. *Robinson,* 519 U.S. at 346. In *Robinson,* the plaintiff's former employer had allegedly given a negative reference to plaintiff's prospective employer in retaliation for plaintiff's filing an EEOC charge.[11] In holding that the ADEA's anti-retaliation provisions prohibited this type of conduct, the Supreme Court noted that a different holding would allow an employer to "retaliate with impunity" against a former employee who asserted a discrimination

---

[11] Plaintiff acknowledges that defendant provided him with a positive letter of recommendation after terminating his employment. (Pl.'s Br. [53] at 5; Pl.'s Resp. [53] at Ex. 8.)

23

claim.  *Id.*

Here, plaintiff's retaliation claim is based on alleged post-employment retaliatory acts by defendant that plaintiff contends led to his termination from Stone Mountain Chrysler and Metro Dodge, two dealerships that hired plaintiff after defendant terminated his employment.  Plaintiff contends that someone employed with defendant informed Stone Mountain Chrysler ["sometimes referred to as "Stone Mountain"] that plaintiff had filed an EEOC charge against the defendant; after this revelation, plaintiff was fired.[12]  Thereafter, Metro Dodge hired plaintiff, but plaintiff alleges that the latter informed him that they had changed their minds about hiring him and, further, that one of Metro's employees mentioned the discrimination lawsuit that plaintiff had filed against the defendant here. As the plaintiff had not disclosed the existence of this lawsuit to Metro, he surmises that someone employed with defendant must have done so. In short, plaintiff contends that defendant's disclosure to subsequent employers of the fact that plaintiff had filed an EEOC claim constituted a retaliatory act.

---

[12]  Plaintiff has since filed a lawsuit against Stone Mountain Chrysler, charging race discrimination and retaliation. *See Rowan v. Stone Mountain Chrysler Jeep, Inc.,* 1:04-3568-JOF, N.D. Ga (2004). The retaliation claim in this second lawsuit is based on Stone Mountain Chrysler's termination of plaintiff, after Stone Mountain Chrysler learned that plaintiff had filed an EEOC charge against the defendant in this action. *Id.* [44] at 17-21.  This second lawsuit is assigned to the Court's colleague, the Honorable J. Owen Forrester.

24

Defendant contends that plaintiff has not presented any admissible, non-hearsay evidence to indicate that defendant informed either Stone Mountain Chrysler or Metro Dodge that defendant had filed an EEOC charge against the defendant. Defendant argues that plaintiff's assertion of that fact is based on nothing more than speculation. The Court concludes, however, that plaintiff has produced sufficient evidence to create a question of fact as to whether one of defendant's agents communicated the fact of plaintiff's EEOC charge against the defendant to officials at Stone Mountain Chrysler.

Specifically, Peggy Lawhorne, who was plaintiff's immediate supervisor at Stone Mountain Chrysler, has filed an affidavit indicating that, while plaintiff was an employee, Stone Mountain's general manager, Jim Jackson, spent a day at defendant Hayes Chrysler, observing how it conducted its business. According to Ms. Lawhorne, shortly thereafter, Mr. Jackson indicated to Ms. Lawhorne that he had learned that the plaintiff had filed an EEOC charge against Hayes. (Pl.'s Resp. [54], Aff. of Peggy Lawhorne).

The Court concludes that the above evidence permits an inference that someone at defendant's dealership informed Mr. Jackson that the plaintiff had filed an EEOC charge against the defendant. Ms. Lawhorne testified that Mr. Jackson related to her that he had learned certain facts about the plaintiff. Lawhorne's testimony is

AO 72A
(Rev.8/82)

not hearsay, as she is subject to cross-examination concerning whether Jackson actually made the comments.  Further, plaintiff does not offer Jackson's statement to prove the truth of the matter asserted by Jackson:  that the plaintiff had filed an EEOC charge. Obviously, the assertion is true and undisputed by either party here. Instead, the relevancy of the testimony is that Jackson's statement reveals his <u>awareness</u> that the plaintiff had filed an EEOC charge, whether or not the plaintiff had, in fact, done so.   Given plaintiff's assertion that he had never disclosed this information to Jackson, one could infer, on all these circumstances, that Jackson necessarily gained his awareness by talking to one of defendant's employees or officials.[13] Thus, there is a disputed issue of fact, as to whether any member of defendant's staff disclosed the existence of this EEOC charge to Jim Jackson of Stone Mountain Chrysler.

Of course, the fact that an agent of defendant's disclosed to Jackson the existence of plaintiff's EEOC charge does not, by itself, establish any causal connection between that disclosure and the later

---

[13]   In addition, Jackson is or was the general manager of Stone Mountain Chrysler, which is a defendant in the second action filed by plaintiff.  *See* 24 n.12 *supra*.   One basis of that suit is the retaliatory action that Stone Mountain Chrysler took, purportedly as a result of learning that plaintiff had filed an EEOC charge against his previous employer.   As to that litigation, Jackson's statement could properly be considered to be an admission that he had learned about the EEOC charge.   Admissions by a party-opponent are not considered to be hearsay.   FED. R. EVID. 801(d)(2).

AO 72A
(Rev.8/82)

termination by Stone Mountain Chrysler of the plaintiff, as Stone Mountain could have terminated the plaintiff for other reasons.[14] Were the record in this case the last word, the Court would likely grant summary judgment for the defendant on the retaliation claim because plaintiff has not filled in the blanks with evidence that would support his contention that there was any connection between the disclosure and the later termination by Stone Mountain. *See Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996) (noting that a retaliation claim fails "if the evidence is insufficient as a matter of law to prove a causal nexus between retaliatory motive and the adverse employment decision").

Nevertheless, since the parties filed their briefs on defendant's summary judgment motion in this case, defendant Stone Mountain Chrysler and plaintiff have filed a motion for summary judgment and response, respectively, in the Stone Mountain Chrysler litigation referenced in plaintiff's response in this case.   In reviewing the defendant's motion and the plaintiff's response, filed on March 6, 2006, it becomes clear that the centerpiece of that

---

[14]   In his own affidavit, the plaintiff affies that, after learning that the plaintiff had filed an EEOC charge against defendant, Mr. Jackson told plaintiff's immediate supervisor to find a way to fire plaintiff because of that charge. (Pl.'s Resp. at ¶ 23 [54].)   Defendant correctly notes that such a statement by plaintiff is not based on personal knowledge and, as Ms. Lawhorne never says this in her affidavit, plaintiff cites no non-hearsay basis for the assertion.   Accordingly, the Court disregards it.

AO 72A
(Rev.8/82)

litigation as to the retaliation claim is the dispute over whether there was a connection between plaintiff's EEOC charge against defendant Hayes and the decision to fire the plaintiff by his next employer, Stone Mountain Chrysler.  *See Rowan v. Stone Mountain Chrysler Jeep, Inc.,* 1:04-3568-JOF, at [41,44].   Stone Mountain Chrysler contends that there was no connection; plaintiff insists that there was.  Moreover, whereas there is no evidence in this case, other than the skeletal affidavit assertion recounted above, to flesh out the circumstances of plaintiff's termination by Stone Mountain Chrysler, the briefing in the latter case indicates that more evidence has been adduced on that point in this second litigation.

Ultimately, given that the record in this second action before Judge Forrester is the repository of all of the evidence pertaining to any causal connection between defendant's disclosure of the EEOC charge and plaintiff's dismissal by Stone Mountain Chrysler, this Court cannot determine thoroughly, on the present briefing or record, whether or not defendant is entitled to summary judgment on the retaliation claim.  Besides the fact that the evidence on this point is sparse, any effort by this Court to reach a resolution could conceivably result in inconsistent results between it and Judge Forrester.   For example, if this Court denied summary judgment to defendant Hayes on the retaliation claim, but Judge Forrester granted summary judgment to defendant Stone Mountain Chrysler on the related

28

retaliation claim, the results would not only be inconsistent, but arguably unjust. That is, the sparse evidence before this Court indicates that defendant Hayes wrote a "glowing letter of recommendation" for the plaintiff (Plaintiff's Resp. [54], Aff. of Rowen, at ¶ 22) when the latter left defendant's employ and that someone at defendant's dealership later mentioned to Jim Jackson that plaintiff had filed an EEOC claim against defendant when Jackson happened to be visiting the defendant's workplace. Assuming without deciding that an actionable retaliation claim arises when a former employer truthfully discloses to a subsequent employer the existence of an EEOC claim,[15] one can infer no more than that an employee of defendant Hayes, at most, made mention of the EEOC claim. It was Stone Mountain Chrysler, the defendant in the second action, that actually fired the plaintiff, purportedly as result of this EEOC claim. Under these facts, it would be odd to hold defendant Hayes accountable for the consequences of Stone Mountain Chrysler's decision, while at the same time finding no liability on Stone Mountain's part.

For the above reasons, the Court cannot act on the retaliation

---

[15] The defendant has not rested any part of its present motion for summary judgment on an assertion that such a disclosure would not be actionable. This Court does not independently know the circumstances under which such a truthful disclosure would, or would not, be actionable.

29

claim before it until some resolution has occurred in the litigation between the plaintiff and Stone Mountain Chrysler.[16]   Should Judge Forrester deny defendant Stone Mountain Chrysler's motion for summary judgment on the retaliation claim, it would seem to make sense to let that action proceed first.   If a jury finds for the defendant Stone Mountain Chrysler on the retaliation claim, then plaintiff would appear to be collaterally estopped as to the retaliation claim against defendant Hayes in this action.   If a jury finds for plaintiff on this claim, it is unclear what should happen to the present case, as plaintiff presumably should not be able to collect double damages for the same injury in two different actions.[17]

As a result of this impasse, the Court stays and **ADMINISTRATIVELY TERMINATES** this action, pending further developments in the Stone Mountain Chrysler litigation before Judge Forrester. Upon a ruling on the pending motion for summary judgment in this

---

[16]   As the plaintiff has adduced even sketchier facts to support its retaliation claim involving Metro Dodge, the Court likewise does not address this part of plaintiff's claim at this time.

[17]   Defendant Hayes makes a somewhat analogous argument. Specifically, as plaintiff sued Stone Mountain Chrysler for both race discrimination and retaliation, plaintiff should not be able to recover on a theory that defendant Stone Mountain Chrysler terminated plaintiff for racial reasons, while at the same time recovering against defendant on a theory that plaintiff's termination was the result of Stone Mountain's desire to retaliate against plaintiff because the latter filed an EEOC claim against a different employer. (Def.'s Mot. for Summ. J. [45] at 23-24).   The Court does not reach this argument.

AO 72A
(Rev.8/82)

latter case, plaintiff, **within sixty (60) days**, shall file a notice with this Court indicating how the plaintiff suggests this Court proceed on the retaliation claim in this case.  If plaintiff wishes to reopen the action at that time, the Court will do so and, upon briefing by both parties, will then determine what effect the Stone Mountain litigation should have on the course of proceedings in this case.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Motion for Summary Judgment [45] as to the age discrimination claim and **DENIES WITHOUT PREJUDICE** the motion for summary judgment as to the retaliation claim.

The Court further stays and **ADMINISTRATIVELY TERMINATES** this action, pending further rulings in *Rowan v. Stone Mountain Chrysler Jeep, Inc.,* 1:04-3568-JOF.  Upon a ruling by the district court judge on the pending motion for summary judgment in this latter case, plaintiff, **within sixty (60) days**, shall file a notice with this Court indicating what action the plaintiff wishes this Court to take with regard to the retaliation claim in this case.  If plaintiff wishes to reopen the present action at that time, the Court will do so and will then determine what effect the *Stone Mountain Chrysler* litigation should have on the course of proceedings in this case.

31

SO ORDERED, this _____ day of March, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

32